395 So.2d 355 (1981)
Eulice C. BLOUNT
v.
EXXON CORPORATION and Employer's Casualty Company.
No. 13958.
Court of Appeal of Louisiana, First Circuit.
January 26, 1981.
*356 Dana K. Larpenteur, Plaquemine, counsel for plaintiff-appellant, Eulice C. Blount.
John M. Roper, P. O. Box 60626, New Orleans, counsel for defendant-appellee, Exxon Corp.
Brent K. Kinchen, Baton Rouge, counsel for intervenor-appellant, Associated Indem. Corp.
M. O'Neal Walsh, Baton Rouge, counsel for defendants-appellees, H. E. Wiese, Inc., Aetna Ins. Co., Jack Ellis & Herman Thompson.
Wood Brown, III, New Orleans, John S. Campbell, Jr., Baton Rouge, counsel for third party defendant-appellee, H. E. Wiese, Inc.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
The issue in this tort suit on appeal is whether the defendant, Exxon Corporation, is the statutory employer of the plaintiff,[1] Eulice C. Blount, and therefore immune under Louisiana's workmen's compensation laws from suit in tort. The trial court sustained Exxon's motion for summary judgment and ruled that Exxon was the plaintiff's statutory employer. The plaintiff perfected this devolutive appeal, as did the intervenor, Associated Indemnity Corporation, which was the workmen's comp. insurer of plaintiff's employer, H. E. Wiese, Inc.
On February 4, 1977, plaintiff was employed by the Wiese Company as a pipe fitter on Exxon premises. Wiese was under contract with Exxon to convert an ethyl alcohol plant into an isopropyl alcohol facility. The conversion was known as the IPA Expansion Project. At the time of the injury, Blount was assisting other employees of Wiese in installing orifice flanges in some existing pipelines for the purpose of completing the off-site work, which work *357 was being done away from the main construction and which consisted of tying the pipelines into other units of the plant. When a Wiese safety employee noticed that the makeshift scaffold upon which the plaintiff was standing did not have handrails, he ordered that the scaffold be lowered and that handrails be placed thereon. At about this time, the plaintiff stepped from the scaffold which was some 14 to 20 feet above the ground and slipped on some wet insulation which was wrapped around some of the pipes. Plaintiff's fall to the ground resulted in severe and permanent injury.
After plaintiff filed his suit and after a number of additional pleadings were filed, Exxon moved for summary judgment contending that it was the plaintiff's statutory employer under La.R.S. 23:1061, the so-called Section 6 defense. In connection with its motion for summary judgment, Exxon filed three affidavits of its employees.
E. M. Boyle, who at the time of Blount's injury was manager of the project development department at Exxon's chemical plant, stated in his affidavit that Exxon's engineers and draftsmen had the skills necessary to design the entire IPA Expansion Project. However, because of demands on their time and other concerns, these personnel were not used on the total job and part of the work was contracted out to the H. E. Wiese Company. Boyle also stated that the Baton Rouge chemical plant continued to operate during the changeover although the ethyl alcohol unit was not producing at the time.
Another employee, Seth H. Mitchell, mechanical division manager at the time of the injury, stated that the installation of orifice flanges in existing pipes was a regular chore included in the ordinary work done by pipe fitters and welders employed by Exxon at its Baton Rouge chemical plant. Mitchell said approximately 500 employees reported to him, including about 27 welders, 113 pipe fitters and other skilled craftsmen. Exxon's skilled craftsmen, according to Mitchell, were capable of doing most of not all of the work undertaken by the Wiese Company in converting the ethyl unit to an isopropyl production unit. Work load demands, economic feasibility and the amount of time required to handle the conversion resulted in Exxon's decision to contract the work out to the Wiese Company, Mitchell testified.
A third employee, Stanley G. Tebbe, head of the Maintenance II Department at the chemical plant at the time of the injury, also stated that the installation and removal of orifice flanges and pipes were a part of the regular work load of the welders and pipe fitters employed by his department. Exxon's work force in that regard included about 25 welders and more than 100 pipe fitters.
Exxon also submitted two depositions in support of its motion for summary judgment. Both of these depositions were concerned basically with the facts of what happened on the day Blount was injured. One of the deponents, Herman A. Thompson, manager of safety and security with the Wiese Company, stated that the type of work being done by Wiese at the time Blount was injured was demolition work, rebuilding part of the plant and renovating an existing production unit.
Although the plaintiff's counsel argued against the motion for summary judgment at the hearing on the motion, he filed no countervailing affidavits or depositions. The plaintiff did, however, file a motion for a new trial alleging that new information not available at the time the motion for summary judgment was tried had since become available. This new evidence, consisting of depositions taken in another case arising out of the same construction project at the Baton Rouge chemical plant, purportedly refuted the statements made in the affidavits submitted by Exxon. The trial court denied the motion for the new trial and these appeals were perfected.
In appealing plaintiff-appellant contends the trial judge erred:
(1) in dispensing with this case via summary judgment when the case was unripe;
*358 (2) in holding there was no genuine issue as to material fact in the litigation;
(3) in holding that the work being performed by plaintiff was in the ordinary trade, business and occupation of Exxon, and holding Exxon to be plaintiff's statutory employer; and
(4) in holding La.R.S. 23:1032 & 1061 constitutional.
The appeal of intervenor is based on the same errors alleged by plaintiff, except for the constitutional issue.

MOTION FOR NEW TRIAL
Appellant has not assigned as error the denial of a new trial; however, we must briefly discuss the denial of a new trial to determine whether certain depositions are properly before this court.
In his application for new trial, plaintiff asserted that he discovered the existence of a second suit arising out of the same work which was being done at the time Blount was injured. He said that the depositions, affidavits and other pleadings in the second suit refuted the affidavits filed on behalf of Exxon in the instant case. He also averred that the suit record could not be obtained with due diligence before the summary judgment hearing in the present case and that the record was discovered only after "an exhaustive search" of the court records in East Baton Rouge Parish.
Though the trial judge in his written reasons denying the new trial indicates that he read the depositions, this does not mean that the depositions attached to the motion for a new trial were offered, introduced and filed into evidence, thus becoming part of the evidentiary record on appeal. Under La.C.C.P. art. 1972, in a non-jury case two questions are before the trial court(1) whether the judgment is clearly contrary to the law and evidence and (2) whether the party seeking the new trial could have discovered the new evidence with due diligence. Under the first situation the decision must be made on the evidence presented at the original trial; thus, no new evidence is involved. In the second case, the only question before the court is one of "diligence." The court may look at the evidence in making this determination, but until a new trial is granted, the trial court does not receive any additional evidence in the case. Thus, those depositions attached to plaintiff-appellant's motion for a new trial are not before this court and form no part of the record on appeal.

SUMMARY JUDGMENT
A person desiring to obtain a summary judgment must show by affidavits or otherwise that there is no genuine issue of material fact in connection with the matter upon which summary judgment is sought. If the mover overcomes this obstacle, he may be granted a summary judgment if he is entitled to such a judgment as a matter of law. La.C.C.P. art. 966. Our Supreme Court has recently restated an oft quoted rule that only when reasonable minds must inevitably conclude that the mover for summary judgment is entitled to a judgment as a matter of law on the facts before the court is a summary judgment warranted. Chiasson v. Domingue, 372 So.2d 1225 (La. 1979). Any doubt is resolved against the granting of summary judgment and in favor of a trial on the merits to resolve any disputed facts. Although the facts presented in support of and in opposition to the motion for summary judgment in the Chaisson case were undisputed, those facts did not show that the mover was entitled to judgment as a matter of law.
In the case at bar, Exxon was required to show that the job of converting a facility like the ethyl alcohol unit to a facility like the isopropyl alcohol unit was a part of the regular trade, business or occupation of Exxon. La.R.S. 23:1061. Exxon's affidavits showing that the installation of orifice flanges was a regular chore ordinarily done by employees of Exxon does not answer the question. Neither does the affidavit which states that Exxon had the capacity to design the entire expansion project. The pertinent material fact in this litigation is whether Exxon in the normal course of its trade, business or occupation regularly *359 constructs conversion projects of this magnitude. The fact that Exxon has employees on its payroll who are capable of installing orifice flanges or doing other particular tasks which could be associated with a major conversion project does not satisfy the inquiry.
In Reeves v. Louisiana and Arkansas Railway Company et al, 282 So.2d 503 (La. 1973), the Supreme Court found that although Humble Oil and Refining Company had 1200 employees in its mechanical division, a majority of which engaged in maintenance work, it was not Humble's business practice to engage in new construction of the type and magnitude involved in that case. The court held that Humble was not the statutory employer of an employee hired by another company for the construction of a new petroleum coking unit on Humble's premises. The court found that Humble was primarily an operating or refining company and that Humble had never designed a coking unit or any comparable plant. Humble had neither the design capability nor the manpower available for such work.
In Boudreaux v. Boudreaux, 369 So.2d 1117 (La.App. 1st Cir. 1979), writ refused, 371 So.2d 615 (La.1979), this court found statutory employer status because the employee was engaged in routine maintenance work which was a part of the regular business of the chemical plant at which the plaintiff was working. The court mentioned the "well established ... general rule" that routine repairs and maintenance, as compared to new or additional construction, are part of the regular business of a manufacturing plant. The distinction, therefore, was drawn between repairs and maintenance vis-a-vis new and additional construction.
Likewise, in Barnes v. Sun Oil Company, 362 So.2d 761 (La.1978), the court found statutory employer status because the plaintiff was engaged in routine maintenance and repair work at Sun Oil's Sweet Bay Lake oil production facility. The fact that Sun used its own employees to perform maintenance and repair work at similar facilities and the fact that without periodic repair and continuing maintenance the production facility could not be properly operated were factors influencing the court's decision. The court stated "that there is no essential dispute as to the fact that maintenance and repair services performed at Sweet Bay Lake by [plaintiff's employer] were part of the [defendant's] `trade, business or occupation.'" 362 So.2d at 764.
Exxon's counsel relies particularly upon the case of O'Keefe v. Warner, 267 So.2d 920 (La.App. 1st Cir. 1972). In O'Keefe, this court held that a plaintiff who was injured while doing certain demolition work at a chemical plant in Baton Rouge was a statutory employee of the company which owned the plant. The plant owner had filed an affidavit stating that it "operates, maintains, dismantles, modifies and expands the chemical plant with its own employees." 267 So.2d at 920. The court noted that the plaintiff failed to present opposing affidavits to contravene the assertion by the plant owner that dismantling jobs similar to that being done by the plaintiff's principal employer were routinely done by the plant owner's employees. The court went on to hold that the plant owner fell squarely within the purview of La.R.S. 23:1061.
Exxon on appeal attempts to rely not only on the affidavits it submitted in connection with its motion for summary judgment but also on the depositions the plaintiff sought to have introduced in connection with the plaintiff's motion for a new trial. As we held earlier, these depositions do not form part of the record on appeal. Neither Exxon nor the plaintiff can rely on the depositions which were submitted by the plaintiff in connection with the motion for new trial. This appeal on the trial court's sustaining of the motion for summary judgment will be decided on the evidence which was in the record at the time the trial court rendered its judgment on the motion for summary judgment. As indicated earlier, the only evidence before the trial court was Exxon's three affidavits and the two depositions which dealt mainly with the facts of the accident.
*360 There is no essential dispute that maintenance and repair services performed by non-Exxon employees at Exxon's chemical plant are part of Exxon's trade, business or occupation. This statement, however, does not answer the question of whether Exxon's trade, business or occupation includes a major reconversion of one type of alcohol production facility into another type of alcohol production facility. There is no evidence in the record before us as to whether Exxon regularly engaged in the business of converting its production facilities from one type of unit to another. Although one affidavit stated that Exxon had the design capacity to design the entire expansion project, the same affidavit noted that Exxon chose to contract out some of that work because Exxon design personnel were needed elsewhere.
As noted above, the plaintiff filed no countervailing affidavits or other evidence to show that there was a genuine issue of material fact. But even if the opposing party does not show that there is a genuine factual dispute, the party moving for a summary judgment must bring forth sufficient evidence to show that it is entitled to a judgment as a matter of law. Chaisson v. Domingue, supra. To be entitled to judgment as a matter of law in this case, Exxon had to prove that reconversion projects of the type at issue in this case were regularly done as a part of Exxon's trade, business or occupation. This case is distinguishable from the O'Keefe case, supra, because in O'Keefe, the chemical company submitted an affidavit to the effect that it regularly operated, maintained, dismantled, modified and expanded the chemical plant with its own employees. Exxon introduced no such affidavit in the case at bar. While we find that there is no genuine issue of material fact, we must also find that Exxon has not proven that it is entitled to a judgment as a matter of law.
Inasmuch as we reverse the decision of the trial court and remand for further proceedings, we pretermit any discussion on the constitutional issue.
The trial court's decision granting summary judgment in favor of Exxon is therefore reversed. This case is remanded for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed against Exxon.
REVERSED AND REMANDED.
PONDER, Judge, concurring.
I concur.
I do not agree that the depositions of Arbour Tebbe and Mitchell should not be considered.
The minute entry reads as follows:

"FRIDAY, MAY 16, 1980: This matter came on for hearing on application for new trial filed on behalf of plaintiff. Documentary evidence was introduced, arguments were had by counsel, the matter submitted to the Court and was by the Court taken under advisement."
The reasons for judgment read as follows:
"A motion for new trial came on for hearing on May 16, 1980, at which time certain depositions were filed. The Court after reading the depositions does not find that a new trial should be granted, accordingly the motion for new trial is denied.
June 12, 1980."
The practical effect of what the court has done is that it granted a partial new trial, considered the affidavits and then decided that the result should not be changed.
After reading the depositions, however, I agree that they do not change the result.
Paraphrasing a statement in Barnes v. Sun Oil Co., 362 So.2d 761 (La.1978), I agree that Exxon has not proved that it "and other [refineries] regularly perform the same type work at other facilities as part of their business with their own employees."
I therefore concur.
NOTES
[1] This action was brought originally by Eulice C. Blount; his wife was later appointed as his curatrix and was substituted as the proper party plaintiff. We will refer to Blount as the plaintiff.