423 So.2d 1243 (1982)
Lloyd Leo BRAUD
v.
DIXIE MACHINE WELDING & METAL WORKS, INC.; American Home Assurance Company; Freeport Chemical Company; Liberty Mutual Insurance Company; John Werling, d/b/a Werling Woodworks; and Idso Investments, Inc.
No. 5-167.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1982.
Rehearing Denied January 17, 1983.
*1244 Adams & Reese, Robert E. Couhig, Jr., Mark J. Spansel, Jones, Walker, Waechter, Poitevent, Carrere, & Denegre, John J. Weigel, New Orleans, for IDSO Investments, Inc., Dixie Mach. Welding & Metal Works, Inc., American Home Assur. Co., and Freeport Chemical Co., defendants-appellees.
Cave & McKay, Donald G. Cave, Baton Rouge, for plaintiff-appellant.
Before CHEHARDY, GAUDIN and DUFRESNE, JJ.
CHEHARDY, Judge.
Plaintiff, Lloyd Leo Braud, has appealed from a summary judgment dismissing his tort suit against Freeport Chemical Company (Freeport), IDSO Investments, Inc. (IDSO), Dixie Machine Welding & Metal Works, Inc. (Dixie), and American Home Assurance Company (American). We reverse as to Freeport, finding an unanswered question of material fact. We affirm as to the other defendants, however, finding that there are no questions of fact material to their liability and that they are entitled to judgment as a matter of law.
Lloyd Leo Braud was an ironworker employed by Welding and Manufacturing Company (WAMCO) on a job for Freeport Chemical Company. Braud was severely injured when he suffered a 40-foot fall on the job, when a board on which he was standing broke. WAMCO is an unincorporated division of Dixie; Dixie is owned entirely by IDSO; and American was the liability insurer of Dixie and IDSO.
Freeport produces phosphoric acid. To produce that acid, Freeport buys sulphur, converts the sulphur to sulphuric acid, buys phosphate rock and reacts the phosphate rock with sulphuric acid to make phosphoric acid. The phosphate rock must be ground into smaller particles as a preliminary to this process. At the time of Braud's accident, WAMCO was installing a new bin bottom and conveyor belt at Freeport's plant as part of a $4.5 million project by Freeport to convert from a system of dry rock grinding to wet rock grinding.
Braud sued Dixie, IDSO, American and Freeport in tort. All filed for summary judgment, alleging plaintiff's exclusive remedy against them was for workmen's compensation. The district court granted summary judgment as to all defendants.
The major issue on appeal is whether Freeport was Braud's statutory employer under LSA-R.S. 23:1061.[1] As in all such cases, that question requires a factual determination that the work in which plaintiff was engaged was part of the trade, business or occupation of Freeport.
The affidavits submitted by Freeport, uncontroverted by plaintiff, establish the following facts:
Freeport is a major producer of phosphoric acid. Freeport decided to convert its rock-grinding system to the wet rock method because the dry rock method formerly in *1245 use was becoming economically unfeasible. The design of the system and much of the work on it were supervised by Freeport employees. Part of the conversion process required installation of a new bin bottom on the storage silo and replacement of the conveyor system running from the bin bottom. This was the work being performed by WAMCO at the time Braud was injured.
Freeport had the equipment and personnel to perform the actual conversion work it contracted out, but the overall project demanded more time than Freeport could devote to it. Freeport did allocate part of its labor crew to portions of the conversion project, and maintained 24-hour supervision over the project. At the time of Braud's accident, Freeport's 160-member maintenance crew had 50 laborers capable of doing the type of work Braud performed, and these laborers often performed this type of work at the plant.
A recent First Circuit case is on point with our factual situation. In Blount v. Exxon Corp., 395 So.2d 355 (La.App. 1st Cir.1981), a pipe fitter brought a tort action for injuries sustained in a fall during work on a major reconversion by Exxon of one type of alcohol production facility into another type of such facility. In that case, the court stated, at page 360:
"There is no essential dispute that maintenance and repair services performed by non-Exxon employees at Exxon's chemical plant are part of Exxon's trade, business or occupation. This statement, however, does not answer the question of whether Exxon's trade, business or occupation includes a major reconversion of one type of alcohol production facility into another type of alcohol production facility. There is no evidence in the record before us as to whether Exxon regularly engaged in the business of converting its production facilities from one type of unit to another. Although one affidavit stated that Exxon had the design capacity to design the entire expansion project, the same affidavit noted that Exxon chose to contract out some of that work because Exxon design personnel were needed elsewhere.
"As noted above, the plaintiff filed no countervailing affidavits or other evidence to show that there was a genuine issue of material fact. But even if the opposing party does not show that there is a genuine factual dispute, the party moving for a summary judgment must bring forth sufficient evidence to show that it is entitled to a judgment as a matter of law. [Citation omitted.] To be entitled to judgment as a matter of law in this case, Exxon had to prove that reconversion projects of the type at issue in this case were regularly done as a part of Exxon's trade, business or occupation. * * *"
That reasoning precisely describes the matter now before us. Accordingly, we find there remains a question of material fact as to whether Freeport regularly engaged in the business of converting its production facilities from one type of unit to another. This factual issue precludes summary judgment as to Freeport.
See also, Reeves v. Louisiana and Arkansas Railway Company, 282 So.2d 503 (La. 1973); Ball v. Kaiser Aluminum & Chemical Corporation, 112 So.2d 741 (Orl.App.1959); Blanchard v. Engine & Gas Compressor Services, Inc., 613 F.2d 65 (5th Cir.1980); Murphy v. Georgia-Pac. Corp., 628 F.2d 862 (5th Cir.1980).
It is uncontested that Braud was injured in the course and scope of his employment with WAMCO. Clearly, therefore, his exclusive remedy against Dixie (his employer) and IDSO (sole stockholder of his employer) is for workmen's compensation. LSA-R.S. 23:1032.[2] In addition, the defense *1246 of tort immunity under this section is not personal to the immune party but can be invoked by his insurer sued under the direct action statute. Carlisle v. State, Dept. of Transportation and Development, 400 So.2d 284 (La.App. 3d Cir.1981), writ denied 404 So.2d 1256. Therefore, American properly was accorded the protection of the statute.
Braud, however, contends the exclusivity of R.S. 23:1032 cannot extend to Dixie, IDSO and American for two reasons:
1. They were contractually liable to protect, indemnify, and save Freeport harmless from liability of the type asserted by plaintiff; and
2. Braud contends it is unresolved as a matter of law whether an employer who is the manufacturer or supplier of a defective product may be liable both in tort and for compensation to its employee injured by the product.
There is no merit to either contention. The indemnity obligation of WAMCO (and through it of Dixie, IDSO and American) exists purely by virtue of the contract between WAMCO and Freeport. Plaintiff was not a party to that contract. Therefore, he cannot assert any rights under it.
The issue of liability of an employer to his employee for injuries caused by a defective product was settled succinctly and correctly in Atchison v. Archer-Daniels-Midland Co., 360 So.2d 599 at 600, writ denied 362 So.2d 1389 (La.App. 4th Cir. 1978): "There is no cause of action in `products liability' against one's employer for injury for which the employer owes workmen's compensation."
For the foregoing reasons, the decision of the trial court is affirmed as to its dismissal of IDSO Investments, Inc., Dixie Machine Welding & Metal Works, Inc., and American Home Assurance Company. The decision of the trial court is reversed as to the summary judgment in favor of Freeport Chemical Company, and the case is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed against Freeport Chemical Company.
REVERSED AND REMANDED.
NOTES
[1] "Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

"Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."
[2] "The rights and remedies herein granted to an employee or his dependent on account of an injury or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word `principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.

"Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
"The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section."