261 So.2d 293 (1972)
ESTATE of Emily MISTRIC, Wife of Regis MOREAU or J. Daniel RIVETTE, Plaintiff-Appellant,
v.
Regis MOREAU, Defendant-Appellee.
No. 3796.
Court of Appeal of Louisiana. Third Circuit.
April 19, 1972.
Rehearing Denied May 16, 1972.
Writ Refused June 15, 1972.
*294 Daniel J. McGee, Mamou, and Andrew Vidrine, Church Point, for plaintiff-appellant.
Sandoz, Sandoz & Schiff by Lawrence B. Sandoz, Jr., Opelousas, for defendant-appellee.
Before FRUGÉ, HOOD, and CULPEPPER, JJ.
FRUGÉ, Judge.
This is an appeal from a judgment annulling a statutory will offered into probate and an olographic will already probated for the lack of qualifications of the testatrix to execute such documents. Plaintiffs, principally J. Daniel Rivette, have appealed from that decision. We reverse and remand.
Emily Mistric died on the 1st of December, 1967, leaving no surviving children or parents. She was survived by her husband, Regis Moreau, and a number of collateral relatives. Being the sole heir of an olographic will executed on February 13, 1967, Regis Moreau, offered it into probate on the 20th of December, 1967, and had it probated on the 3rd of January, 1968.
On May 10, 1968, J. Daniel Rivette, one of the heirs under a statutory will executed on the 5th of May, 1964, offered a carbon original of that document into probate and attacked the olographic will on the basis of fraud. In his answers to the petition, defendant Regis Moreau raised the issue of lack of qualifications of testatrix at the time of execution of the statutory will. Shortly thereafter, Regis Moreau filed a motion for summary judgment against the plaintiff and attached thereto depositions to prove that testatrix was blind at the date of execution of the statutory will. The District Court granted that motion. In Rivette v. Moreau, 225 So.2d 762 (La. App. 3rd Cir., 1969), we reversed and remanded the case for a trial of a material issue of facts whether or not the deceased could read at the time of execution of the statutory will.
After a full hearing of the evidence, the trial judge concluded that on the 5th of May, 1964, the date of execution of the statutory will, testatrix was unable to read, thus lacked the qualifications for executing the statutory will. He also ruled that in 1967 on the date of execution of the olographic will, testatrix was unable to write, and thereby lacked the qualifications for executing an olographic will. The plaintiff-appellant is appealing from the judgment annulling the statutory will. No appeal has been taken from the second judgment annulling the olograhic will.
The suit attacking the olographic will was brought more than three months after the probate of that will; hence, the burden was upon the party attacking the probated will. However, no appeal was taken from that judgment annulling the olographic will; consequently as the case rests before us, the only will under attack is the statutory will. Hence, the burden rests on the defendant-opponent of the statutory will to prove the lack of qualifications of the testatrix to execute the will.
There is an initial presumption which has been invoked on behalf of the appellant that the qualifications of a testator to execute a testament are to be presumed. Succession of Chopin, 214 So.2d 248 (La.App. 4th Cir., 1968); Succession of Thibodeaux, 238 La. 791, 116 So.2d 525 (1959); cf. Succession of Morgan, 257 La. 380, 242 So.2d 551 (1971). The burden is on the opponent to prove the lack of qualifications. That is more correct in this instance as the statutory will is apparently the only will ever executed by the testatrix which varied the codal rules for disposition of property. The qualifications in this instance *295 are set forth in R.S. 9:2443, wherein it is stated:
"Except as provided in R.S. 9:2442 with respect to a testator who is physically unable to sign his name, those who know not how or are not able to sign their names, and those who know not how or are not able to read, cannot make dispositions in the form of the will provided for in R.S. 9:2442, nor be attesting witnesses thereto."
It is quite evident from the evidence in this record that Emily Mistric did not read the will at the time of its execution. However, there seems to be no requirement in the statute that the testator actually read the document. The requirement is that the testator be able to read physically and academically.
The only issue presented here is the issue of whether or not Emily Mistric was able to read at the time of execution of the statutory will. There is positive testimony in the record that the testatrix was able to read just shortly before the date of execution of the statutory will. Dr. Louis Weinstein, an ophthalmologist, examined Emily Mistric on April 12, 1964, just prior to the date of execution of the statutory will. His testimony is that with the aid of a particular monocular device which he obtained for her, Emily Mistric could read. When he tested her she was able to read type-written material. Other ophthalmologists examined Mrs. Moreau and testified that she probably could not read in 1964. However, they did not have the advantage of an examination of Mrs. Moreau near the time of execution of the will in 1964. Dr. Sonnier examined her last in 1962. Dr. Cassanova first examined her in 1967, long after the execution of the will.
There is other testimony in the record that Emily Mistric possessed a magnifying glass and attempted on various occasions to use it to read or to watch television. There is testimony by J. Daniel Rivette that he observed the testatrix reading on a number of occasions when he was in her presence. Defendant-opponent of the statutory will, himself, admitted that as late as 1967, his wife could read a bit with the aid of a magnifying glass.
There is considerable negative evidence in the record by various witnesses that testatrix could not read; however, in most instances they were not in a position to know whether or not she actually did read, as they were not in her presence except on limited number of occasions. The failure of these witnesses to observe her reading can be explained in a vast number of ways. Principally, reading was a laborious task for her and for that reason she probably did not reach much and particularly not in front of guests.
The positive testimony of the several witnesses who did observe her read should be given far more credence than the negative testimony, even though of a greater number of witnesses. Succession of Thibodeaux, supra. The negative testimony is insufficient to overcome the forementioned presumption of qualifications on the part of the testatrix to execute the will. For that reason we find that the trial judge erred and reverse his finding that the testatrix lacked the necessary qualifications at the date of execution of the will. We remand this case to the District Court for the probate of the statutory will.
For the foregoing reasons, the judgment appealed from is reversed and remanded. The defendant-appellee is to pay all costs.
Reversed and remanded.