366 So.2d 602 (1978)
Succession of George V. KITE.
Robert J. KITE et al., Plaintiffs-Appellees,
v.
Billie R. KITE, Defendant-Appellant,
Transamerica Insurance Company, Intervenor-Appellee-Appellant.
No. 6663.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1978.
Rehearings Denied January 31, 1979.
Writ Refused March 23, 1979.
Hunt, Godwin, Painter & Roddy, E. C. Hunt, Jr., Lake Charles, for defendant-appellant.
Raggio, Farrar, Cappel & Chozen, Richard A. Chozen, Lake Charles, for intervenor-appellee-appellant.
R. Keith Findley, Lake Charles, for plaintiffs-appellees.
Before CULPEPPER, FORET and CUTRER, JJ.
FORET, Judge.
This is an action brought to annul the probated statutory will of George V. Kite, which action was filed within three months of the date on which the will was introduced for probate. The determinative issue in this appeal is whether the decedent knew how to read, and therefore had the capacity to execute a statutory will under LSA-R.S. 9:2442.
George V. Kite died on March 4, 1977, leaving as his survivors his widow, Mrs. Billie R. Kite, and five children who were *603 issues of a prior marriage. He left a will executed in statutory form bequeathing the majority of the disposable portion of his estate to his widow and appointing her as executrix. The will was executed on April 21, 1976, and was admitted to probate on petition of Mrs. Kite on March 17, 1977.
Decedent's surviving children instituted this action to annul the probated will. The petition named Billie R. Kite as the defendant, and alleged that the decedent did not know how to read, and therefore, the will was invalid under LSA-R.S. 9:2442[1]. Transamerica Insurance Company, the liability insurer of the notary public before whom the will was executed, intervened in the suit.
After trial was held, the trial judge ruled that the testator could not read. Accordingly, the lower court decreed the will to be null and void; denied a plea of estoppel filed by the defendant; revoked the previously issued orders probating the will and appointing the defendant as executrix, and assessed all costs and expenses of the proceedings to Mrs. Billie R. Kite. From this judgment, the defendant and intervenor now appeal.
After a careful review of the multiple volumes comprising the record in this case, the conclusion is inescapable that the controversy raised by the parties is entirely factual. The only issue presented for consideration is whether or not the testator could read. The trial judge, in a well written opinion, concluded that he could not read, and the record amply supports this determination.
The evidence introduced at trial revealed that George V. Kite was a successful and prosperous businessman in his community. The decedent owned and operated a local automobile dealership and was involved in several other concerns in the DeRidder area. During the course of his lifetime, the decedent established many relationships with other associates, professionals, workers and friends. But, despite Mr. Kite's involvement in the community and his frequent contact with others, the defendant could not produce a single individual or even one item of direct evidence to establish that the decedent could read.
The defendant introduced testimony from many of the testator's friends and associates to the effect that the decedent had the ability to read. Several witnesses indicated that the testator could identify numbers in a telephone book and then dial those numbers on the telephone. Additionally, it was established that the decedent could sign his name, as he had frequent occasion to do so in his business. However, a careful review of the evidence reveals that not one individual categorically stated that he had ever observed George Kite read.
Those witnesses who testified on behalf of the defendant were "of the opinion" that Mr. Kite knew how to read. Although they may have seen him with a paper in his hand, or a letter nearby, or a book or office memorandum on which he appeared to be working, nevertheless, no witness could positively state that George Kite had read to them. In fact, although a thorough search was conducted by the defendant, there was absolutely no evidence introduced of any writing composed by the decedent at any time in his life to indicate that he had the ability to read and write. Despite George Kite's many business dealings, the defendant could not produce even a single sentence written by the decedent.
One of the decedent's sisters, Mrs. Lena Myrick, testified by deposition that her brother had attended school until the third grade and that he was good in his studies and that he knew his ABC's; however, this testimony was refuted by another of the decedent's sisters, Mrs. Dovie Smith, and the decedent's only living brother, Mr. Clarence Kite, who stated that their brother could neither read nor write and had in fact not attended school. The trial court classified *604 the evidence given by Mrs. Lena Myrick as circumstantial whereas that of Mrs. Dovie Smith and Mr. Clarence Kite was characterized as direct. Also, the defendant's own investigator testified that his investigation of all of the locations in which the decedent spent his early childhood failed to produce any evidence that the decedent had attended any school.
In the Estate of Moreau v. Moreau, 261 So.2d 293 (La.App. 3 Cir. 1972), this Court held that positive testimony should be given far more credence than negative testimony. In the case at bar, the trial court, in its written reasons for judgment, classified the majority of the evidence presented by the defendant as being circumstantial and held that the witnesses testifying for the plaintiff gave the only direct evidence that the decedent could not read. Our examination of this record leads us to the same conclusion.
Despite the efforts of the defendant to the contrary, the record in this case is detailed with numerous positive evidences that the decedent could not read. The officer who issued Mr. Kite's driver's license, Mr. Joseph Lofton, testified that he was unable to give Mr. Kite the written test as required because Mr. Kite had informed him that he could not read. Clarence Kite, the brother of George Kite, testified as did his sister, Mrs. Dovie Smith, that their brother, the decedent, could not read or write other than to sign his name.
All five of the decedent's children stated that their father could never read or write and cited numerous situations in which they had to read and write for him.
Indeed, the evidence suggests that it was not until after the will was probated that the defendant began to openly suggest that her husband had some ability to read. Prior to that time, her statements were to the effect that her husband could not read or write and on one occasion, after her husband had suffered a stroke, she even informed a speech pathologist treating her husband that Mr. Kite had never been able to read or write and therefore, it would be useless for the therapist to attempt to restore Mr. Kite's speech by having him read from printed flash cards.
At the time this will was executed, April 21, 1976, the law was clear that ". . . those who know not how or are not able to read, cannot make dispositions in the form of the will provided for in R.S. 9:2442 . . ." LSA-R.S. 9:2443. Clearly then, in order for the testator to have made a statutory will, he must have known how to read.
The trial judge utilized LSA-R.S. 1:3, holding that "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language . . ." to determine that under this factual context, the decedent did not know how to read. It is not necessary to determine herein the applicable test for what constitutes the ability to read or write for the trial judge here found that the decedent had absolutely no ability to either read or write.
This is a factual determination which should not be interfered with in the absence of manifest error. As our review of the record indicates ample support for the trial judge's conclusion, this Court will not reverse the decision of the lower court.

ASSESSMENT OF COURT COSTS
Defendant-appellant, Billie R. Kite, argues, on appeal, that the assessment of court costs by the trial court against Mrs. Kite should be reversed, and the costs assessed against the mass of the succession. We agree. As executrix of the succession of George Kite, Mrs. Kite had a duty to defend the validity of the decedent's last will and testament. Therefore, all costs of this litigation should be assessed against the mass of the succession. The judgment of the trial court assessing the trial court costs against Mrs. Kite, defendant-appellant, is hereby reversed.
In all other respects, the judgment of the trial court is affirmed.
Costs of this appeal are assessed against the Succession of George V. Kite.
AMENDED AND AFFIRMED.

*605 REHEARING OPINION
PER CURIAM:
We note in the appellant's application for rehearing the allegation that this Court misinterpreted the law by placing upon the appellant the burden of proving the capacity of the testator to execute a statutory will. We disagree. Although admittedly, it is not clearly spelled out in our original opinion, this Court in reviewing this case accepted the argument of the appellant, as did the Trial Court, that the ability to read is properly classified as a matter of capacity, and that as such, the burden is upon the opponents of the will (plaintiffs-appellees) to prove beyond a reasonable doubt that the testator lacked this capacity. See Succession of Glynn, 167 So.2d 533 (La.App. 4th Cir. 1964); Guidry v. Hardy, 254 So.2d 675 (La.App. 3rd Cir. 1971) and cases cited therein. A re-review of this matter convinces us that the opponents met this burden.
NOTES
[1] LSA-R.S. 9:2442 has now been amended to provide that an individual who can neither read nor write may nevertheless utilize a statutory will if it is executed before a notary and three competent witnesses, and the other formal requirements of R.S. 9:2442(B) are fulfilled. Act # 333, 1976, effective date October 1, 1976.