428 So.2d 1081 (1983)
In the Matter of the SUCCESSION OF Paul Weldon COMEAUX.
No. 82 CA 0418.
Court of Appeal of Louisiana, First Circuit.
February 22, 1983.
James H. Morgan, III, Baton Rouge, for plaintiff-appellant Mrs. Annie Mae Lomax Comeaux.
Lennie F. Perez, Baton Rouge, for defendants-appellees W.G. Comeaux and Gloria Mixon Comeaux.
Before LOTTINGER, COLE and CARTER, JJ.
*1082 LOTTINGER, Judge.
This is a proceeding to annul a statutory will. The suit was brought by W.G. Comeaux and Gloria Mixon Comeaux, the testator's son and daughter. Mrs. Annie Mae Lomax Comeaux, the testator's second wife, appeared as the proponent of the will. From a judgment declaring the will invalid because the testator, Paul W. Comeaux, could not read, petitioners appeal.

FACTS
The will in question was executed on March 29, 1979, before a notary public and bequeathed one-half of the testator's property to his two children (the opponents) and the other half to his second wife (the proponent). The will was executed in the form provided by La.R.S. 9:2442 A, as it read at that time.
The will was probated on December 15, 1980. On February 5th, 1981, decedent's two children brought this action to annul the testament, alleging that their father lacked the requisite mental capacity and that he was unable to read. The opponents abandoned the assertion that their father was of unsound mind when the will was executed. The trial court found that Paul Comeaux could not read, thus he lacked the capacity to confect a statutory will under La.R.S. 9:2442 A, as it then read. The will was held invalid.
The opponents-appellees produced evidence that Paul Comeaux could not read: no one, including the proponent, had ever seen him reading a newspaper, magazine or book; his children, first wife, and friends read to him from newspapers, looked up telephone numbers for him, and helped him read and write with regard to his construction business; a lifetime friend of Comeaux also unable to read, testified that he and Comeaux were incapable of writing a receipt to a woman who wanted to pay them for work they had done; although Comeaux maintained a checking account, others filled the checks out while he only signed them; and finally, the opponents pointed out the absence of any written message or thought that could be attributed to Comeaux and produced at trial.
The proponent offered some rebuttal evidence that Comeaux could read: his address and telephone book contained several names and numbers that were said to have been written by Comeaux; his brother remembered that Comeaux completed the third grade and had read aloud in class; his driver's license, which indicated that a test had been taken when applied for was introduced (though Comeaux's son-in-law testified that he had accompanied him and that the test had been eschewed by an acquaintance at the license office); he was seen examining some plans and specifications on the job; according to his wife, Comeaux regularly shopped at the supermarket and left short notes to her when he left home; Comeaux drove competently; and lastly, the notary who prepared the will asked Comeaux if he could read and received an affirmative response.
The trial court ruled that the evidence showed that Comeaux could not read and that this was proved beyond a reasonable doubt.

SPECIFICATIONS OF ERROR
The proponent-appellant argues the trial court erred:
1) in finding that the opponents had proved beyond a reasonable doubt that Comeaux could not read and
2) in requiring that the testator be able to read the will if asked to do so and applying such strict requirements to the statutory will under the provisions of La.R.S. 9:2442.

I
The proponent-appellant first urges us to hold that the burden of proof on the opponents here is to prove the testator's illiteracy beyond a reasonable doubt. She then asserts that the opponents failed to carry that burden.
We agree with appellant's assertion as to the burden of proof. Under La.R.S. 9:2442 A, as it read when the will was *1083 executed, the ability to read was made an element of testamentary capacity by the legislature. See Succession of Littleton, 391 So.2d 944 (La.App. 2nd Cir.1980); Succession of Arnold, 375 So.2d 157 (La.App. 2nd Cir.1979), writ denied 376 So.2d 1267 (La., 1979); Succession of Kite, 366 So.2d 602 (La.App. 3rd Cir.1978), writ denied 369 So.2d 155 (La.1979); Succession of Glynn, 167 So.2d 533 (La.App. 4th Cir.1964), writ refused 246 La. 913, 168 So.2d 823 (1964).
Testamentary capacity is presumed. The degree of proof required to overcome this presumption is proof beyond a reasonable doubt, a burden likened to that of criminal cases. Succession of Hoover, 385 So.2d 351 (La.App. 1st Cir.1980); Succession of Bush, 292 So.2d 915 (La.App. 1st Cir.1974), writ refused 294 So.2d 837 (La.1974).
Since we hold that the ability to read is a matter of testamentary capacity, and the proof required to show lack of capacity is proof beyond a reasonable doubt, that same proof is needed where one alleges the illiteracy of the testator.
A thorough review of the evidence adduced below convinces us that the trial court did not err in ruling that the opponents-appellees carried that burden. The proponent herself stated that she did not believe her husband could have read the will, both on deposition and at trial. Disinterested witnesses who knew Comeaux for most of his life, such as Joe DiPuma, testified that he could not read and backed up their beliefs with specific incidents. No one except his brother, who displayed a somewhat faulty memory, had ever heard him read aloud (and that was decades ago). There was some evidence that he could understand and utilize numbers and symbols, but having this ability alone does not classify one as literate by any standard. The testator was said to have written short notes to his wife, but neither these nor any other writings attributable to Comeaux were produced.
We therefore find that the trial court made no error in finding that the testator could not read beyond a reasonable doubt.

II
Proponent-appellant's second contention is that the trial court erroneously required that the testator be able to read the will; she claims that the statute only requires the testator have the ability to read. See Estate of Moreau v. Moreau, 261 So.2d 293 (La.App. 3rd Cir.1972), writ denied 262 La. 193, 262 So.2d 789 (1972).
Proponent-appellant's argument fails because it is evident from the oral reasons given that the trial court found that Comeaux was illiterate for all purposes. This included reading and understanding the testament.
Proponent-appellant's last point is that invalidating Comeaux's will here because of the noncompliance with La.R.S. 9:2442 is a slavish adherence to technical requirements. There was no hint of a subversion of the testator's intent, nor of deception by the notary. Nevertheless, we are reminded of the Supreme Court's pronouncement in Succession of Roussell, 373 So.2d 155 (La.1979), which was recently quoted with approval in Evans v. Evans, 410 So.2d 729 (La.1982):
"`A material deviation from the manner of execution prescribed by statute will be fatal to the validity of the will. The fact that there is no fraud, or even suggestion or intimation of it, will not justify the courts in departing from the statutory requirements, even to bring about justice in the particular instance, since any material relaxation of the statutory or codal rule will open up a fruitful field for fraud, substitution, and imposition.'" 410 So.2d at 732.
For the above and foregoing reasons, the trial court's judgment declaring the statutory testament of Paul W. Comeaux to be invalid is affirmed. All costs are to be paid by the appellant.
AFFIRMED.