441 So.2d 39 (1983)
SUCCESSION OF Annie Crouch BUDWAH.
No. 83-244.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
*40 Philip A. LeTard, Patrick A. McDonough, Vidalia, for proponents-appellants.
Glenn B. Gremillion, Ferriday, for opponents-appellees.
Before FORET, STOKER and YELVERTON, JJ.
FORET, Judge.
Harold Watson (proponent-appellant) filed a petition for probate of the testament of his great-aunt, Mrs. Annie Crouch Budwah (decedent). Shortly thereafter, Mrs. Josie Crouch Ussery[1] filed an opposition to the probate of said testament based on a number of grounds.
Pursuant to the provisions of LSA-C.C.P. Article 2901, a contradictory trial of this matter was held. The trial court rendered judgment in favor of Mrs. Ussery, declaring decedent's testament to be invalid, and null and void. The trial court further rendered judgment, declaring that decedent had died intestate.
Proponent-appellant appeals and raises the following issues:
(1) Whether the trial court erred in finding that proponent-appellant had the burden of proving that decedent had the physical ability to read at the time she executed her testament;
(2) Whether the trial court erred in finding that decedent did not have the physical ability to read at the time she executed her testament; and,
(3) Whether the trial court erred in denying proponent-appellant's motion for a new trial on the ground that its judgment was contrary to the law and evidence.

FACTS
On January 30, 1981, testatrix executed a testament in statutory form (see LSA-R.S. 9:2442)[2] in which she bequeathed to Mrs. *41 Ussery the usufruct over all of her property. She further bequeathed her undivided interest in a forty-acre tract of land located in Catahoula Parish to Foster L. Watson, and the remainder of her property to be divided equally between Barney F. Watson and proponent-appellant. Finally, testatrix appointed proponent-appellant as her testamentary-executor. On April 25, 1981, testatrix died at the Concordia Parish Hospital.
On July 2,1981, proponent-appellant filed the above mentioned petition for probate of decedent's testament. On July 8,1981, Mrs. Ussery filed her opposition to the probate of said testament. On that same date, Mrs. Ussery, Maurice Elnora Crouch Willson, and Homer C. Tiffey filed a petition for appointment of an administrator in which they requested that Mrs. Willson be appointed administratrix of decedent's succession, and that Tiffey be appointed administrator thereof (apparently co-administrators). On January 8, 1982, the trial court issued an order appointing Mrs. Willson and Tiffey as administratrix and administrator of decedent's succession, respectively. After complying with the requirements of law, letters of administration were issued to this effect.
As noted above, the trial court rendered judgment in favor of Mrs. Ussery. On November 18, 1982, proponent-appellant filed a motion for new trial in which he alleged that said judgment was contrary to the law and evidence. The trial court denied the motion.

BURDEN OF PROOF
Proponent-appellant contends that the trial court erred in finding that he had the burden of proving that decedent was physically able to read at the time she executed her testament. He argues that Mrs. Ussery had the burden of proving that decedent could not do so. A review of the trial court's written opinion shows that it did place this burden of proof on proponent-appellant.
A party attacking a will on the basis of the testator's incapacity must prove beyond a reasonable doubt that at the time the will was made, the testator did not have sufficient knowledge and understanding of the effect of his action. Succession of Dubos, 422 So.2d 444 (La.App. 4 Cir.1982), writ denied, 429 So.2d 132 (La.1983), application not considered, 429 So.2d 160 (La.1983); Succession of Collins v. Hebert, 377 So.2d 516 (La.App. 3 Cir.1979), writ denied, 379 So.2d 15 (La.1980); Succession of Brown, 251 So.2d 465 (La.App. 1 Cir.1971). Stated another way, there exists a very strong presumption (much like the presumption of an accused's innocence) that the testator possessed the requisite testamentary capacity. Succession of Dubos, supra; Succession of Zinsel, 360 So.2d 587 (La.App. 4 Cir.1978), writ denied, 363 So.2d 72 (La.1978); Succession of Arnold, 375 So.2d 157 (La.App. 2 Cir.1979), writ denied, 376 So.2d 1267 (La. 1979). Finally, a testator's physical ability to read is considered by our jurisprudence to be an element of testamentary capacity, and therefore the party alleging the lack of that capacity assumes the same burden as that which attaches to proof of mental incapacity. Succession of Dubos, supra; Succession of Littleton, 391 So.2d 944 (La.App. 2 Cir.1980); Succession of Arnold, supra; Succession of Glynn, 167 So.2d 533 (La.App. 4 Cir.1964), writ denied, 246 La. 913, 168 So.2d 823 (1964).
It is our opinion that the trial court erroneously placed the burden of proof on proponent-appellant to show that decedent had physical ability to read at the time she executed her will.

DECEDENT'S PHYSICAL ABILITY TO READ
Proponent-appellant contends that the trial court committed manifest error in *42 finding that decedent did not have the physical ability to read at the time she executed her will. He argues that the evidence shows that decedent had the physical ability to read or, in the alternative, that Mrs. Ussery failed to prove beyond a reasonable doubt that she lacked this capacity.
We note first of all that proponent-appellant relies on a number of affidavits and depositions which he introduced under a proffer of proof at the hearing on his motion for a new trial to prove that decedent had the physical ability to read.
Under LSA-C.C.P. Article 1972, in a non-jury case, two questions are before the trial court in deciding whether to grant a motion for a new trial: (1) whether the judgment is clearly contrary to the law and evidence and (2) whether the party seeking the new trial should have discovered the new evidence with due diligence. Under the first situation, the decision must be made on the evidence presented at the original trial; thus, no new evidence is involved. In the second case, the only question before the trial court is one of diligence. The trial court may look at the evidence in making this determination, but until a new trial is granted, the trial court does not receive any additional evidence in the case. Thus, those affidavits and depositions offered under a proffer of proof by proponent-appellant at the hearing on his motion for a new trial are not before this Court and form no part of the record on appeal. See Blount v. Exxon Corp., 395 So.2d 355 (La.App. 1 Cir.1981).
There is no dispute concerning the fact that decedent was literate. Apparently, she was a retired school teacher. Mrs. Willson was one of the persons who witnessed the execution of decedent's testament. She stated that decedent was hospitalized at the time in the Jeff Davis Hospital in Natchez. She further stated that decedent was aware of the contents of her testament at that time. However, she believed that decedent was physically unable to read her testament because of her poor eyesight. Mrs. Willson testified that: decedent asked for and was given her glasses when her testament was handed to her by the attorney who had prepared it; however, she was still unable to see well enough to read it, and she gave it to Mrs. Willson to read for her. Mrs. Willson was also unable to read the testament because of her limited education and, according to her testimony, she then gave the testament to the attorney to read, which he did.
George Griffing, the attorney who prepared decedent's testament, was also a witness to its execution. He testified that he handed the testament to decedent, and that she propped it up against some object and began looking over it. At the same time, he explained to her what the various clauses contained therein meant. He stated that he did not read the will to decedent word for word, and that he did remember decedent asking for and receiving her glasses. Once she was given her glasses, she put them on and began looking over her testament, and gave no indication whatsoever that she was unable to read it.
Proponent-appellant testified that he had lived with decedent from 1973 until she was hospitalized in Natchez. During this time period, decedent handled all of her business affairs without help from anyone. She continued to do this until she was hospitalized in Natchez. After that, he would bring her mail to her in the hospital, and she would open it, look at it, and make comments such as, this bill needs to be paid, etc. This continued up to the date on which she executed the testament.
Barney Watson testified that he visited decedent while she was in the hospital. He stated that decedent was unable to recognize anyone entering her room until they got by her bedside. However, it was his opinion that decedent was unable to read at this time, although he did admit that she was able to ride home with him in his automobile when she was discharged from the hospital. Thus, it appears that her health was such that there was no need to use an ambulance to transport her.
Homer Tiffey testified that he believed decedent could read her mail before she *43 entered the hospital. He also testified that decedent was able to recognize different people if they got close to her bedside. However, he stated that decedent had asked him to read a get well card she had received in the hospital because she was unable to see the writing contained therein. Except for this incident, he was unable to state whether or not decedent was physically able to read while she was in the hospital.
It is our opinion that the opponents of decedent's will have clearly failed to meet their heavy burden of proving beyond a reasonable doubt that decedent was physically unable to read at the time she executed her testament. The trial court's finding that decedent was unable to do so is clearly wrong and must be reversed.

DENIAL OF MOTION FOR NEW TRIAL
Because of our decision herein, the issue of whether or not the trial court erred in failing to grant proponent-appellant's motion for a new trial is moot.

DECREE
For the above and foregoing reasons, the judgment of the trial court invalidating the testament in dispute is hereby reversed, vacated, and set aside and the case is remanded for further proceedings in accordance with law.
The assessment of the costs of this appeal, and in the trial court, shall await a final determination in this matter.
REVERSED AND REMANDED.
NOTES
[1] On March 19, 1982, Mrs. Josie Crouch Ussery died. This was after the trial on this matter was held, but prior to the time that this appeal was filed. After the appeal was filed, Maurice Elnora Crouch Willson and Homer C. Tiffey filed a "MOTION AND ORDER FOR SUBSTITUTION OF PARTIES" in which they sought to be substituted as parties in the place and stead of Mrs. Ussery. In their motion, they allege that Mrs. Ussery died intestate, was predeceased by her husband, and left no children or other descendants, nor brothers and sisters. They further allege that Mrs. Willson is a niece, and Mr. Tiffey is a nephew of Mrs. Ussery, and that they are her intestate heirs and next of kin.

After considering the motion, we issued an order to the effect that Mrs. Willson and Mr. Tiffey be substituted as parties to this action, and that they be allowed to proceed to prosecute it.
[2] LSA-R.S. 9:2443(A) provides that: "A statutory will may be executed under this Section by a person whose sight is impaired to the extent that he cannot read or who does not know how to read." However, the statute goes on to require that the will be read aloud in the presence of the testator and three competent witnesses, and that the three witnesses must then sign a declaration identical to, or substantially similar to, the one provided in the statute. The evidence shows that only two competent witnesses signed the declaration in the testament at issue. Thus, we must determine whether all of the provisions of LSA-R.S. 9:2442 were met in executing said testament. One of the requirements of LSA-R.S. 9:2442 is that the testator must be physically able to read at the time the testament is executed.