449 So.2d 189 (1984)
SUCCESSION OF A.W. McKAY, Proponents-Appellees,
v.
Eva McKay MOUNT, et al., Opponents-Appellants.
No. 83-645.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1984.
*190 Griffing & Johnson, Kathy J. Johnson, Jonesville, for opponents-appellants.
Smith, Taliaferro, Seibert, Boothe & Purvis, Virgil Russell Purvis, Jonesville, for proponents-appellees.
Before CUTRER, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
This is a will contest. The substantial issue on appeal is whether the opponents of the will of A.W. McKay proved beyond a reasonable doubt that the deceased was not physically able to read when the will was made on July 25, 1980. The trial court found that the deceased was physically able to read and ordered the will probated and executed. We affirm.
Aside from the factual issue of the deceased's physical ability to read, there are two other issues raised by the appeal. One is burden of proof and the other is the denial of a new trial. We will discuss these three issues after first outlining the procedural facts.
Procedural Facts
On July 25, 1980, A.W. McKay executed a testament in statutory form in accordance with the provisions of LSA-R.S. 9:2442. He bequeathed certain property to his nephew David Cruse and the remainder of his property to two other nephews and his sister Mae McKay Cruse. He appointed David Cruse as his testamentary executor.
A.W. McKay died on January 17, 1983. On February 11, 1983, David Cruse filed a petition for probate of the testament. On February 28, 1983, three of the deceased's sisters filed an opposition to the probate. The opponents contended that the deceased was physically unable to read when he made the will.
*191 LSA-R.S. 9:2442 sets forth the formal requirements of the statutory will for a person who knows how to sign his name and knows how to and is physically able to read. The next statute, R.S. 9:2443, provides the requirements of the statutory will for a person whose sight is impaired to the extent that he cannot read or who does not know how to read. A principal distinction between the formal requirements of these wills is that the first requires two witnesses while the second requires three witnesses. The will of A.W. McKay was executed before two witnesses. Thus it is that the opponents of the will bring into question the deceased's physical ability to read, because if he was physically unable to read three witnesses would have been required and the will would be invalid.
A contradictory trial of the opposition to probate was held in accordance with LSA-C.C.P. article 2901 and the question of the deceased's physical ability to read at the time the will was made was fully explored. The trial court rendered judgment declaring the testament to be valid. The opponents filed a motion for a new trial which was denied.
We will now discuss the three issues in the order of (1) burden of proof, (2) deceased's physical ability to read, and (3) the denial of a new trial.
Burden of Proof
Burden of proof was treated as an issue by the parties at the trial level and is similarly argued on appeal. It is contended by the proponents of the will that the burden of proving the deceased was physically unable to read was on the opponents and the standard was beyond a reasonable doubt. The opponents argue, on the other hand, that the burden of proof was on the proponents to establish by a preponderance that the deceased was physically able to read. The trial court did not consider it necessary to determine which burden of proof test was applicable. The trial court found that by either test the will should stand.
In the recent case of Succession of Budwah, 441 So.2d 39 (La.App. 3rd Cir.1983) this court was faced with a determination of the burden of proof regarding the issue of whether a deceased was physically able to read at the time of execution of a testament. After reviewing the jurisprudence on the subject, we reached the following conclusions:
(1) A testator's physical ability to read is an element of testamentary capacity;
(2) There exists a "very strong presumption" that the testator possessed the requisite testamentary capacity, and
(3) A party attacking a will on the basis of a testator's incapacity must prove it beyond a reasonable doubt.
Applying Budwah to the instant case, the burden of proof was on the opponents of the will and the standard was beyond a reasonable doubt.
Deceased's Physical Ability to Read
The trial lasted three days and over 20 witnesses were heard. The trial judge took the matter under advisement and gave excellent, detailed reasons for judgment.
Mr. McKay died in his eighties, a lifelong resident of rural Catahoula. It was undisputed that he was literate. He attended high school. At age 17 or 18 he sustained an eye injury which left his eyesight permanently impaired. The vision problems did not prevent him from leading an active, successful life. He kept up with current events as well as the stock and commodities market. He did business regularly across the Mississippi River in Natchez where his stockbroker's office was located, and he liked to buy and sell commodities futures. Although he could not drive a car, once he got where he was going he could manage for himself. He did not use a cane or a seeing eye dog or other people's help in getting about and doing his business.
The specific testimony regarding deceased's physical ability to read was conflicting. A number of friends and relatives testified he could not read and that they had to read newspaper articles and stock reports to him, as well as addresses on bills. They said he kept different denominations *192 of currency in separate pockets for identification.
Other witnesses testified that if Mr. McKay held papers close to his eyes, he could read. Reverend Jack Crews testified that he regularly filled out the deceased's tax returns. McKay claimed the blind exemption on the form. However, this witness stated that McKay would take the tax return and look at it "real close to his eyes."
W.A. Book, Clerk of Court of Catahoula Parish, testified that the deceased regularly voted absentee and generally did not need assistance in filling out the forms but would occasionally ask for help in determining a person's name. The ballot forms utilized regular sized print. Mr. Book also testified that he would often pull records in the Clerk of Court's office for the deceased, who then appeared to have no trouble reading the records.
Ronnie Darden, a local banker, testified that he often loaned the deceased money and obtained mortgages from him. He stated that the deceased would look over the loan papers holding them close to his eyes.
Mr. H.A. Taliaferro, the attorney who prepared and notarized the execution of the will in this case, testified that he had done legal work for the deceased for years and that McKay would always examine legal documents before signing them. He recited an example about the deceased correcting one of the documents. With regard to this will Mr. Taliaferro stated that he told McKay the requirements of law about being able to read and McKay told him that he could.
The trial court was particularly impressed by the testimony of persons with whom the deceased had had business dealings. About this testimony the court said:
"The central theme of all these witnesses [sic] testimony was to the effect that although Mr. McKay had severe visual impairment, that none of them treated him as a blind person and, in fact, treated him as a person with adequate eyesight who could, with difficulty, read the various documents and legal instruments which they dealt with for him from time to time over a long period of years. In other words, none of these persons in dealing with Mr. McKay on important matters of business and personal affairs ever treated him as being totally unable to read."
The positive testimony of the several witnesses who did observe Mr. McKay read should be given more credence than the negative testimony. See Estate of Moreau v. Moreau, 261 So.2d 293 (La.App. 3rd Cir.1972), writ denied 262 La. 193, 262 So.2d 789 (1972). The negative testimony is insufficient to overcome the heavy burden of proving beyond a reasonable doubt that the decedent was unable to read at the time he executed the will. Furthermore this was a factual determination which should not be disturbed in the absence of manifest error. Succession of Kite, 366 So.2d 602 (La.App. 3rd Cir.1978), writ refused 369 So.2d 155 (La.1979). We find no error in the trial court's ruling.
Denial of a New Trial
Concerning appellants' denial of a motion for a new trial, two questions are before the trial court in deciding whether to grant a motion for a new trial under LSA-C.C.P. article 1972: (1) whether the judgment is clearly contrary to the law and evidence, and (2) whether the party seeking the new trial should have discovered the new evidence with due diligence. Succession of Budwah, supra.
Under the first situation we have determined that the evidence at trial clearly shows the judgment is not contrary to the law or evidence. The second situation is not applicable because the party is not alleging newly discovered evidence.
Under LSA-C.C.P. article 1973 a trial court may also grant a new trial if there is good ground therefor. In the present case appellant sought to introduce a deposition taken after trial. Appellant argues that the testimony was not introduced at trial since the witness was in Europe at the *193 time of the hearing. However at the hearing the trial judge asked appellants' counsel if she wished to have the record left open for the taking of depositions of the witnesses who were subpoenaed but failed to appear at the trial. Counsel replied that the evidence was sufficient without the depositions of the witnesses that did not appear. The trial court thereupon decided the case. Under these facts we find the trial court did not abuse his discretion in denying appellant's motion for a new trial for the introduction of additional testimony.
For the above reasons the judgment is affirmed at appellant's costs.
AFFIRMED.