351 So.2d 797 (1977)
Barbara Jenkins, wife of Darly M. CABLE, Plaintiff-Appellant,
v.
Francis T. CAZAYOU, John W. Simpson and St. Paul Fire & Marine Insurance Co., Defendants-Appellees.
No. 11488.
Court of Appeal of Louisiana, First Circuit.
October 17, 1977.
*798 Peter J. Abadie, Jr., New Orleans, for plaintiff-appellant.
H. Martin Hunley, Jr., New Orleans, for defendants-appellees.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
This is a medical malpractice case in which plaintiff appeals from an adverse judgment. We affirm.
Plaintiff avers that Drs. Francis T. Cazayou and John W. Simpson, obstetrical and gynecological specialists practicing as partners in Covington, Louisiana, were negligent in the performance of two operations on her and in the post-operative care given to her. The first operation, a presacral neurectomy, was performed by Dr. Cazayou with the assistance of Dr. Simpson. Following this operation Ms. Jenkins developed an abscess in the presacral area. It was treated with antibiotics until a complete blockage of the small intestine was discovered by x-ray. A second operation was then performed by Dr. Simpson, assisted by Dr. Cazayou, to surgically remove the obstruction. In this operation a colostomy was performed. The blockage was successfully removed. However, Ms. Jenkins has continually had extensive problems involving her abdominal area.
The testimony of the plaintiff and the two defendant physicians was taken at trial. The other testimony was submitted by deposition. The other witnesses were (1) Dr. Patrick Hunter, a general surgeon in Covington, who examined the plaintiff prior to the second surgery and later performed additional surgery on her, (2) Dr. *799 Jacob Kety, a general practitioner in Covington, who treated the plaintiff on numerous occasions subsequent to the operation in question, (3) Dr. James Willis, a radiologist in Covington, who interpreted numerous x-rays of the plaintiff both before and during the hospitalization in question, and (4) Dr. Edward Hyman, an internist in New Orleans, who treated plaintiff on numerous occasions subsequent to the hospitalization in question.
The trial court found that the plaintiff had failed to carry her burden of showing that these doctors were negligent. "The burden of proof rests with the plaintiff to establish that a physician deviated from the required standard of care employed by other physicians practicing in the same locality and under similar circumstances." Delaune v. Davis, 316 So.2d 7, 9 (La.App. 1st Cir. 1975). Findings of fact made by the trial court should not be disturbed on appeal unless they are found to be manifestly erroneous. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
The plaintiff contends that the determination that the defendants were not guilty of negligence is erroneous. She points to several areas of alleged negligence which we will consider in turn.
Prior to the first surgery plaintiff was suffering from chronic pelvic pain which the doctors were treating with ovulatory drugs. They believed the pain was caused by endometriosis although they did not rule out pelvic inflammatory disease. When the problem did not respond to the conservative drug treatment, Dr. Cazayou recommended a presacral neurectomy. This is a procedure in which certain nerves, whose only function is to recognize pain in the presacral area, are clipped and removed. This recommendation was made by Dr. Cazayou and accepted by Ms. Jenkins. The only other available technique to relieve her pain was a hysterectomy. Because she wished to retain her child-bearing capabilities Ms. Jenkins chose the presacral neurectomy.
Plaintiff apparently contends that malpractice occurred in that no erythrocyte sedimentation rate was obtained prior to surgery. However, the only testimony on this point was that a "sed-rate" was "usually" obtained prior to such an operation. Dr. Kety, who stated this, never testified that failure to obtain a "sed-rate" was negligence.
Ms. Jenkins also contends that a biopsy should have been done during the first surgery. This would have been the only method of confirming the doctors' diagnosis. However, there is no evidence that a determination of whether Ms. Jenkins' problem was endometriosis or pelvic inflammatory disease would have aided in later treatment. In fact, the testimony shows that a biopsy would have prolonged the operation and caused unnecessary blood loss. This failure was not malpractice and in any event there is no showing that it caused damage.
Contention is made that the antibiotic therapy between the two operations was improper. This is based on the evidence that only one antibiotic (which later proved ineffective although it is a commonly used broad spectrum drug) was used by the doctors at a time when Dr. Kety testified he would "cover with antibiotics." The record does not reveal what this phrase means. Plaintiff asserts it means using several antibiotics. Whether this is correct or not, Dr. Kety never testified that the antibiotic therapy used by the doctors was improper.
It is also alleged that the second operation was beyond the competence of Drs. Simpson and Cazayou as obstetricians/gynecologists. The only evidence to support this is the statement of Dr. Kety that he would have liked to have a general surgeon with him in performing the operation. But this does not necessarily indicate that Dr. Simpson and Dr. Cazayou should have had a general surgeon present. They were more expert in gynecological surgery than Dr. Kety, who was only a general practitioner. In any event, Kety never said that it was improper for Dr. Simpson to perform the surgery.
*800 Dr. Kety likewise testified that he would most likely have performed the second surgery before the time that the doctors did. He admitted that the time of intervention would depend upon the clinical course of the patient. He did not actually see the patient as Drs. Simpson and Cazayou had. In any event, he only testified to what he would have done and he was not as expert as either of the defendants. He did not say that they were negligent.
Ms. Jenkins also alleges that the second surgery was improperly performed. There is no medical evidence to support this allegation. All witnesses who testified on this point (Drs. Simpson, Cazayou and Hunter) stated that the surgery was properly done.
The trial brief of counsel for plaintiff in this case is replete with these and other arguments supported largely by inferences of negligence drawn from the defendants' testimony and medical records. However, such inferences by a layman carry almost no weight in a medical malpractice suit. Likewise, simply because one doctor testifies he does a procedure in one way, the court is in no position to infer that another doctor who does it in a different manner is negligent. The plaintiff must prove his case through medical testimony as to the prevailing community standard.
The plaintiff also complains that there was error in denial of her motion for a new trial. She alleged in her motion that she had been operated on since the trial by two doctors "who feel that Dr. Francis T. Cazayou and Dr. John W. Simpson did in fact act toward the plaintiff in a manner which could be construed by this court to be malpractice."
The party seeking a new trial bears a heavy burden.
"For a new trial to be granted on the ground of newly discovered evidence, the party praying for it must show clearly that he discovered this evidence after the trial, and that he used every effort and all diligence in his power to timely procure the necessary evidence, and, if his vigilance is in doubt, his application must fail."
Orlando v. Polito, 228 La. 846, 84 So.2d 433, 434 (1955). Here the plaintiff by affidavit simply states that "to the best of her knowledge and belief" she was unaware of the existence of these witnesses and could not have obtained their testimony with due diligence. We do not believe that this statement constitutes a clear showing. This is especially true in light of the fact that this case was pending in the trial court for five years.
There is likewise no peremptory ground for a new trial unless the new evidence would tend to change the result in the case. Strobel v. Schlegel, 145 So.2d 664 (La.App. 4th Cir. 1962) cert. denied. At the trial of the motion the plaintiff failed to introduce the affidavit or deposition of either doctor. Instead Ms. Jenkins relied on her assertion that their testimony could be construed as showing defendants' malpractice. This is insufficient to show that their testimony would change the result of the first trial.
The judgment of the district court is affirmed at appellant's cost.
AFFIRMED.