LEMMON, Justice.*
This case involves the interpretation of the provisions of a last will and testament executed by Warren Farr on February 5, 1971. The specific dispute involves the ownership (after the trusts created in the will had terminated) of the shares of stock of General American Oil.
I.
In Article I of his five-page will, Farr left to his wife all of the furniture and corporeal movables in the family home (excluding *434 stocks, bonds and cash) and all automobiles. In Article II (which contains the disputed dispositions), Farr made two dispositions in trust.[1] In Paragraph 2.1, he *435 left one-half of his property in a trust for his wife known as the Alice A. Farr Marital Trust.[2] In Paragraph 2.3, he left the remainder of his estate, if his wife survived him, in a separate trust known as the Warren D. Farr Residuary Trust.[3] In Paragraphs 2.4 and 2.5, he further named his wife as income beneficiary of the Residuary Trust and named various individuals and institutions as principal and successive income beneficiaries, designating some legacies as special (nine legacies of cash, one of immovable property, and one of the disputed stock shares) and some (in percentages of the remainder) as residual.
After Farr’s death in 1976, the succession was completed, and the court rendered a judgment of possession. When Mrs. Farr died in 1980, the Residuary Trust terminated under the provisions of the will. The trustee of the two trusts filed a petition for declaratory judgment, requesting a determination of the rights of the parties under the will. The petition incorporated two exhibits which proposed to distribute the principal of the trusts on the basis that one-half of the shares of General American Oil owned by Farr at his death were included in the Marital Trust and the other one-half of the shares were included in the Residu *436 ary Trust, so that the churches were each entitled only to 50% of one-half of the shares (or 25% each). The churches answered, asserting that each was entitled to 50% of the total shares under the plain wording of Paragraph 2.5 e and f. Legatees under Mrs. Farr’s will also filed answers and adopted the trustee’s proposal for distribution.[4]
The matter was submitted on the records of the two succession proceedings, and the trial court rendered judgment declaring that one-half of the shares of General American Oil were included in the Marital ■ Trust, so that the churches were only entitled to divide the other one-half. The court of appeal affirmed. 421 So.2d 941. We granted certiorari. 423 So.2d 1259.
II.
In a dispute over the interpretation of a will, the court should endeavor to determine and carry out the intention of the testator. The court should view the will as a whole and should interpret the language so as to give effect, as far as possible, to every provision in the instrument. Carter v. Succession of Carter, 332 So.2d 439 (La.1976).
In the present dispute, it is impossible to carry out the will according to its literal terms because, as the trustee points out, the testator literally disposed of more than 100% of the oil stock. The churches contend, however, that while the bequest in Paragraph 2.3 is subject to more than one interpretation, the bequest to the churches in Paragraph 2.5 is not. The testator expressly provided in Paragraph 2.5 that each of the two churches, upon the termination of the trusts, was to receive one-half of the total number of shares that he owned at the time of his death, evidencing a clear intent that the churches would together receive the total number of shares of stock. This clear language, the churches argue, should be followed if the remainder of the will can be interpreted so as to give effect to all of its provisions.
Paragraph 2.1, considered alone, may be interpreted as incorporating into the marital trust one-half of each item of property owned by the testator at the time of his death.[5] The provision may also be interpreted as an intention for the testator’s wife to receive one-half of the value of the entire estate at the time of the testator’s death, so that the Marital Trust might be composed of one-half of every item not specifically allocated elsewhere in the will, plus other property sufficient to make up one-half of the value of the entire estate. This interpretation would give full effect to Paragraph 2.1, as well as to Paragraphs 2.3 and 2.5, as long as there was sufficient property to complete the distribution.[6]
The trustee disagrees, however, with this analysis, arguing that the testator clearly intended to bestow the utmost benefit upon his wife and that the churches’ interpretation was contrary to that intent. The trustee’s argument ignores the fact that the testator left his wife all of the income from both trusts, and the income during her lifetime was not affected by the identity of the principal beneficiary. Indeed, the fact that the testator specifically authorized the trustee in Paragraph 3.2 to invade the principal of the Marital Trust to fulfill the wife’s needs and specifically prohibited the trustee under any circumstances from using the principal of the Residuary Trust arguably evidences an intent that the oil *437 stock be maintained intact for his revered churches.[7]
An analysis of the drafting of the overall will also supports a conclusion that the testator intended for the churches to receive all of the shares of General American Oil stock.
The testator apparently experienced difficulty in expressing alternative provisions contingent upon whether his wife survived him or predeceased him. In Article II he provided for his wife’s survival, leaving her one-half of his property in trust and the income for life from the other half that passed to the second trust. The difficulty came in listing the special legacies (other than cash) that were to go to principal beneficiaries of the second trust. Although he had already willed one-half of all his property to the first trust, he willed specific immovable property and stock to certain principal beneficiaries in the second trust.[8] The testator then in Article III provided for his wife’s prior death and willed all of his property to the special and residuary legatees named in Article II.
Thus (if we accept the churches’ interpretation of Paragraph 2.5), the testator intended that, while his wife would receive the income from all the succession property for life, the individuals and institutions listed in Paragraph 2.5 a through l would receive (eventually) the same amount of cash and the same properties, whether or not the testator’s wife survived him, and those listed in Paragraph 2.5 m would receive the same percentage of the residuum in either event (although the residuum, of course, would be different, depending on the order of death). The consistency of these alternative dispositions is an additional persuasive factor for concluding that the testator intended for the churches to receive all of the shares of General American Oil stock, whether or not his wife survived him.
The churches’ proposed distribution of the principal also fulfills every disposition expressed by the testator. The will qualified for the marital deduction, and his wife received all of the income from his succession property during her lifetime. His wife’s heirs and legatees will receive property (through the Marital Trust) which was valued at one-half of the total value of his estate at his death. The principal beneficiaries of the Residual Trust, who were designated by the testator as particular legatees, each will receive the full amount of the particular legacies (in cash or in property) stipulated in the will.[9] The principal beneficiaries, who were designated as residual legatees, each will receive the stipulated percentages of the “remainder of the property” after distribution of the property necessary to complete the foregoing dispositions. The only parties affected by this interpretation of the ambiguous provisions of the will are the wife’s heirs and legatees, and they are affected only because of the phenomenal increase in the stock’s value after the testator’s death, an occurrence which the testator could not possibly have foreseen.[10]
*438 Accordingly, the judgments of the lower courts are reversed, and the case is remanded to the district court for rendition of a declaratory judgment in accordance with this opinion.
WATSON, J., dissents with reasons.

 The Honorable Lawrence A. Chehardy participated in this decision as an Associate Justice ad hoc in place of Associate Justice Fred A. Blanche, Jr., who was recused.

. Article II provides as follows:
"2.1 To the Louisiana National Bank of Baton Rouge, Louisiana, as Trustee for my wife, Alice A. Farr, I will one-half (½) of all of my property, both movable and immovable and wherever located, owned at my death.
"2.2 This trust is to be known as the Alice A. Farr Marital Trust and all of the income from ■ this entire trust shall be paid to my wife during her lifetime annually, or, at the Trustee’s election, at more frequent intervals. My wife shall have the, full and unrestricted right to bequeath her entire interest in favor of her estate or to whomever she may see fit, and no person may divert any part of this to any other person than my wife.
"2.3 If my wife, Alice A. Farr, survives me, then I will to Louisiana National Bank of Baton Rouge, Baton Rouge, Louisiana, as Trustee, all of the residue and remainder of my estate of every nature and description and wherever located owned at my death in a separate trust to be known as the Warren D. Farr Residuary Trust.
“2.4 My wife, Alice A. Farr, shall be income beneficiary of the Warren D. Farr Residuary Trust for her lifetime. All trust income shall be payable to her at least annually or at the more frequent intervals as agreed between my wife and trustee.
"2.5 The hereinafter listed individuals and institutions are instituted as the principal beneficiaries and successive income beneficiaries of said Warren D. Farr Residuary Trust, in which trust the trustee shall hold all of the remainder of my estate, of every nature and description, for said beneficiaries until the death of the said Alice A. Farr, at the happening of which event the Warren D. Farr Residuary Trust shall terminate and its assets distributed to said beneficiaries, who shall take as special and residuary legatees of said trust funds, the residuary legatees, however, being distributed any other property I might own at my death. The said beneficiaries (and heirs) shall take said property in the following amounts and proportions, provided, however, that any assets not specifically disposed of, or accuring as a result of the death of any beneficiary or legatee shall be allotted to the residuary legatees.
“Special:
“a. My nephew, Walter R. Farr $2,500.00
“b. My grandniece, Mrs. Virginia S. Tantum 6,000.00
“c. S. Warren Tantum 15,000.00
“d. Julia Mae Arbour 4,000.00
“e. The First Presbyterian Church, Cranbury, New Jersey, in honor of my father, David Farr, and my mother, Virginia Farr; my sister, Lillie Chamberlin, bom Lillie Farr, and her husband, Lewis Chamberlin. 50% of the total number of shares of stock owned by me in General American Oil at my death.
“f. The First Presbyterian Church, Baton Rouge, Louisiana 50% of the total number of shares of stock owned by me in General American Oil at my death.
“g. J. B. Arbour 1,500.00
“h. Robert F. Arbour “i. To Sidney V. Arbour, Jr., 2020 Ramsey Drive, Baton Rouge, Louisiana, as principal beneficiary of the house, improvements, and lot at 2044 Elissale Street, Baton Rouge, La., being Lot No. 44, Zee Zee Gardens Subdivision, subject, however to the right of occupancy in favor of Mamie Smith who is presently occupying this house for as long as she pays twenty dollars ($20.00) per month rent to Sidney V. Arbour, Jr., said right to terminate at her death, or remarriage. 1,000.00
“j. Mrs. Fred Hannaman 6,500.00
“k. Eloise Selig 4,500.00
“1. Mrs. Thelma Holladay 5,000.00
*435 “Residuary:
“m. All of the remainder of the property owned by me at the time of my death of every kind and description and wherever located, including all my holdings in Standard Oil of New Jersey stock, stock dividends and other proceeds derived therefrom excluding the income therefrom to be used by the Trustee for the benefit of Alice A. Farr, is distributed and bequeathed to the following named principal beneficiaries and successive income beneficiaries in the following proportions:
Warren David McNeely, 12%
Kensington, Maryland Warren Lewis Task, 9%
Miami, Florida Mrs. Simon M. McNeely 10%
Kensington, Maryland Mrs. Ted Tomney, 10%
Atlanta, Georgia Mrs. Everette Erickson, 10%
Dayton, New Jersey David Farr, Buttonwood Farm, 9%
Marlboro, New Jersey Mrs. Clarence Cambell, 9%
Highstown, New Jersey Farr Chamberlin, 9%
Cranbury, New Jersey Richard Christenson, 4%
Edson, New Jersey Mrs. J. R. Peterson, 4%
Vineland, New Jersey Lewis Chamberlin, Jr., 4%
Princeton Junction, New Jersey Mrs. Florence Stults, 4%
Cranbury, New Jersey Alex T. Farr, 6%’ Miami, Florida (Emphasis supplied.)

. In Paragraph 2.2, Farr also made provisions which insured that the Marital Trust qualified for the marital deductions under the Internal Revenue Code.

. In Article III, Farr made an alternative provision, in the event that his wife predeceased him, and willed all of his property "to the individuals and institutions named in the above Warren D. Farr Residuary Trust in the amounts and properties and proportions and conditions therein set forth.” He specified that the individuals and institutions listed under the heading Special "are named as special legatees of the properties and in the amounts set opposite their names above” and that the individuals listed under the heading Residuary “are named my residuary legatees *436 in the proportions set opposite their names above”.

. The shares were valued at 1167,000 at the time of Farr's death, but had increased in value to over $630,000 by the time of Mrs. Farr’s death.

. It was not completely possible, however, to carry out the provision (at the time of the execution of the will) according to this interpretation, because the testator bequeathed certain movables in Paragraph 2.1 directly to his wife and not to the trustee.

.Since the wife received all income from both trusts during her lifetime, the composition of the principal of each trust did not become significant until the trusts terminated, at which time the value of the oil stock had increased dramatically.

. Paragraph 3.2 provides:
"Trustee may use the principal of the Alice A. Farr Marital Trust created hereunder for the benefit of my wife, Alice A. Farr, in the event she shall be in need of funds to maintain a respectable standard of living in light of the standard of living enjoyed by her for the five years preceding my death, and to meet extraordinary medical or other expenses. In its determination whether or not to distribute principal, the outside resources of the beneficiary shall be taken into account. However, in no event shall trustee distribute principal from the Warren D. Farr Residuary Trust.”

. These legacies were:
1. The two churches, which were each to receive 50% of the General American Oil stock;
2. Sidney Arbour, who was to receive the immovable property on Ramsey Drive; and
3. The residuary legatees, who were to receive "all my holdings in Standard Oil of New Jersey stock", which was to be included in the remainder of the property.

. Actually, because the immovable property described in Paragraph 2.5 i was community property, the testator could only will one-half of the property to the named legatee.

. The testator, however, knew at the time of execution of the will that there was sufficient property to allocate one-half of the value of his *438 estate to the Marital Trust without utilizing the General American Oil stock.