LEWIS S. DOHERTY, Judge Pro Tem.*
The Village of Varnado (plaintiff) filed suit against the Varnado Volunteer Fire Department, Inc. (defendant)[1] to recover, funds disbursed to and held by defendant pursuant to LSA-R.S 22:1580-1587. LSA-R.S. 22:1583 levies a tax on foreign fire insurers amounting to two percent of premiums received from business written in Louisiana. LSA-R.S. 22:1581 provides a scheme by which an incorporated municipality, or any fire or waterworks district in an unincorporated municipality, which has a “regularly paid fire department as defined in R.S. 22:1580,” or, alternatively, an “active volunteer fire department,” may become eligible to receive the tax proceeds. Funds totalling $49,906.44 were paid to defendant from 1974 through 1985 under this scheme.
Plaintiff sued, alleging the funds should rightfully have gone to it rather than to defendant. The trial court ruled in defendant’s favor after a trial on the merits. In oral reasons for judgment, the trial judge stated that plaintiff failed to prove it was properly certified to receive the funds pursuant to LSA-R.S. 22:1581.
After judgment, plaintiff moved for a new trial. It asserted that it had obtained new evidence from state records concerning certification under LSA-R.S. 22:1581. The trial court denied the motion for new trial because “... merely cumulative evidence to that produced at trial should not be the basis for a granting of a new trial.” Plaintiff appeals from the final judgment, specifying two errors: that the trial court erred in its failure to find that plaintiff was the correct recipient of the insurance rebate; and that the trial court erred in failing to grant a new trial based on plaintiffs discovery of new evidence in the state treasurer’s office.
In 1973, the then-mayor of the Village of Varnado, Clotilde Chandler, applied to the *948 state treasurer for the fire insurance premium rebate at issue here. At that time, the fire department was not incorporated and was an entirely volunteer organization, according tó Mayor Chandler’s testimony. A copy of Mayor Chandler’s original draft of the letter was introduced into evidence. It refers to the “Varnado Volunteer Fire Department” and encloses information “necessary for the Varnado Volunteer Fire Department to receive a rebate from fire insurance written within the corporate limits.” The letter enclosed, according to its text, a description of a survey. The letter further indicates that aid was supplied outside the corporate limits as well as within. No enclosures were introduced into evidence.
The fire truck used by defendant was bought by plaintiff on November 22, 1971, and the building in which the truck was garaged was also bought by the Village for the intended purpose of storing the fire truck there. The bill of sale for the fire truck indicated “Village of Varnado, Community Volunteer Fire Department” as vendee. Likewise, the truck was titled in the name of “Village of Varnado Community Volunteer Fire Department.” A later revised bill of sale shows “Village of Var-nado” as the vendee, apparently in response to a letter from the Department of Motor Vehicles requesting a copy of the fire department charter. On January 27, 1972, Donald Lee, legal counsel for the Village of Varnado, wrote to Mayor Homer Seal enclosing the corrected bill of sale and certificate of origin of the fire truck, and further stated, “We are also prepared to do the corporation [sic] of the Varnado Community Volunteer Fire Department if you are now ready.” The fire department was incorporated on February 7, 1975.
The first check was received in response to Mayor Chandler’s letter on July 15,1974, in the amount of $8,522.22. Mayor Chandler deposited the check in an account in Washington Bank titled “Village of Varna-do Volunteer Fire Department.” Mayor Chandler testified she was afraid there was a mistake because of the unusually large amount of the check. Another check, in the amount of $142.72, was deposited into the account in September of 1975.
Thereafter, the Police Jury began receiving the checks directly and disbursing funds to the Varnado Volunteer Fire Department. Jimmy Ezell, the fire chief, received the checks. He testified he was unable to remember how they were addressed. The checks continued to be deposited into the Washington Bank account until Chief Ezell opened a new account at First State Bank in the name of Varnado Volunteer Fire Department and transferred the balance into that account in 1983. When Mayor Daniel Fornea took office in 1976, he was unaware of the account and only learned of its existence in 1985. He notified the Police Jury that any future checks would be sent to his post office box from that time on.
According to documentation sent with the checks from the state treasurer, the population of the area serviced, upon which the fire insurance rebates were based, was 4,033. The population of the Village of Varnado, according to Mayor Fornea and Ezell, was around 340. Ezell testified that there had never been a formal limit set on the area to be serviced by the fire department, and the majority of calls came from outside the corporate limits of the Village of Varnado.
Receipts for gasoline, oil, and miscellaneous expenses dating from 1974 through 1985 were introduced into evidence. In almost all eases, the receipts indicated services rendered to the “Varnado Volunteer Fire Department.” Mayor Carl Fornea testified that to his knowledge the Village paid no expenses for the fire department other than the electric bill for the fire station from 1976 through 1985. Fire Chief Jimmy Ezell testified that the Varnado Volunteer Fire Department paid expenses for the fire truck. Audits of expenses incurred from 1973 through 1976 by the Village of Varnado show combined figures for gas and oil expenses for the police car and fire truck.
It was not until 1986 that the Volunteer Fire Department first paid an employee regularly. That employee was Carl For- *949 nea, Jr., according to Jimmy Ezell. Ezell had served as fire chief since Mayor Seal’s administration; he was not formally appointed, but simply assumed the responsibility.
The first issue to be addressed under these facts is whether or not, as defined by LSA-R.S. 22:1580[2], either an “active volunteer fire department” or “a regularly paid fire department of an incorporated municipality” existed in the Village of Varnado. It appears that the Varnado Volunteer Fire Department met the definition of an “active volunteer fire department.” Although not legally organized until 1975, a volunteer fire company existed from 1971, when the fire truck was purchased by the Village of Varnado for the use of the Varnado Volunteer Fire Department. In 1975, the Varnado Volunteer Fire Department was incorporated and thus became an organized legal entity. On the other hand, there never was a “regularly paid fire department” of the Village of Varnado. Mayor Chandler testified that there were no regularly paid employees of the fire department and there was no paid fire chief during her term of office from 1972 to 1976. She herself opened the account at Washington Bank in the name of the Varnado Volunteer Fire Department.
The requirements under LSA-R.S. 22:1581 [3] for qualifying to receive the two *950 percent fire insurance rebate are different for volunteer fire departments, and for regularly paid fire departments of an incorporated municipality or fire and waterworks district of an unincorporated municipality. A map or survey of the area actually served by the active volunteer fire department must be enclosed if certification is requested by the active volunteer fire department.
We note that Mayor Chandler’s letter requesting certification refers to a survey, enclosed with the letter. The letter actually requests certification for the “Varnado Volunteer Fire Department.” We agree with the trial judge that there never was a regularly paid fire department of the Village of Varnado, and that the purchase of the fire truck by the Village was meant to help out the Varnado Volunteer Fire Department. Mayor ’ Chandler’s request for certification likewise appears to be an effort to obtain funds for the Varnado Volunteer Fire Department rather than for the Village.
Plaintiff argues that the last sentence of LSA-R.S. 22:1581 authorizes it to recover the funds because the active volunteer fire department in this case is located “within” the incorporated municipality. In interpreting a statute, we are bound to give it the meaning the lawmaker intended. Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984). It seems unlikely that the legislature intended “within” to be read as restrictively as plaintiff would prefer. It can be inferred from the documentary evidence in the record that certification was approved by the state treasurer for an active volunteer fire department serving a population of 4,033, not 340 persons. The district served by the Varnado Volunteer Fire Department extends outside the corporate limits of the Village of Varnado, even though it is located “within” the corporate limits.
Plaintiff’s interpretation would discourage volunteer fire departments from extending protection beyond the narrow confines of an incorporated municipality; further, as defendant points out, it would deter inhabitants outside the incorporated municipality from organizing to form a volunteer fire department, because no two percent funds would be available to such an organized volunteer fire department not located entirely within an incorporated municipality. We believe that the trial court was not clearly wrong; accordingly, we affirm its judgment that the Village of Varnado failed to prove it was entitled to the funds at issue.
Plaintiff’s second specification of error was that the trial court erred in failing to grant its motion for new trial. Plaintiff, at the hearing on its motion for new trial, introduced without objection evidence showing payments made by the state treasurer under LSA-R.S. 22:1581 to incorporated municipalities. Plaintiff obtained this evidence after trial and after it had been informed by state employees that no records were available for the period in question.
Plaintiff argues that this is newly discovered evidence which should entitle it to a new trial either under the peremptory ground of LSA-C.C.P. art. 1972(2), or under the court’s discretion granted pursuant to LSA-C.C.P. art. 1973. LSA-C.C.P. art. 1972(2) requires the court to grant a new trial when the party requesting it has discovered, since the trial, evidence which he could not, with due diligence, have obtained before or during the trial. Such newly discovered evidence must tend to change the result of the first trial; and due diligence requires that a party do all that is reasonable to lead to the discovery of evidence. Brousseau v. Tucker, 479 So.2d 446 (La.App. 1st Cir.1985).
Here, counsel for plaintiff admitted in his brief filed with this court that he, post-trial, was “determined to launch an all out search for some document that might satis *951 fy the trial court.” At the hearing, he stated that he had to agree with defendant’s counsel that, if the same diligence had been exercised prior to trial that was exercised subsequent to trial, the information could have been located then. Obviously, plaintiffs counsel himself did not believe he had exercised due diligence in searching for the evidence prior to trial. We further agree with the trial court that the evidence presented post-trial was cumulative, and would not have led to a different result in any event.
The judgment of the trial court is AFFIRMED. All costs are to be assessed to plaintiff.
AFFIRMED.

 Judge Lewis S. Doherty, III, retired, is serving as judge pro tem by special appointment of the Louisiana Supreme Court to fill the vacancy created by the temporary appointment of Judge Melvin A. Shortess to the Supreme Court.

. Jimmy Ezell, Ancel Williams, Homer Seal and James C. Mohon were also named as defendants but were dismissed on defendants’ exception of no cause of action.

. § 1580. Definitions
For the purposes of this Subpart, the terms as used herein shall have the following meanings:
(1) "Active volunteer fire department" means a voluntary organized fire company which possesses, in serviceable condition for fire duty, apparatus and equipment having a total value of five thousand dollars or more.
(2) “A regularly paid fire department of an incorporated municipality or a fire and waterworks district in any unincorporated municipality” means a regularly paid fire department of such municipality or district which possesses, in serviceable condition for fire duty, apparatus and equipment having a total value of five thousand dollars or more.
Added by Acts 1976, No. 218, § 1, eff. Jan. 1, 1977.

. § 1581. Annual report of premiums received; verified statement by municipality, district, or volunteer fire department
Every foreign or alien insurer, other than life, desiring to engage in or carry on business in this state shall return to the state treasurer a just and true account, verified by oath of the proper officer, of all premiums received from business in this state which insures property of any nature or description against loss or damage by fire, during the year ending December 31 of each year. Any incorporated municipality or any fire or waterworks district in any unincorporated municipality as may be established by ordinance of the governing authority of any parish of this state having or that may have a regularly paid fire department, as defined in R.S. 22:1580, under the control of the mayor or council or other governing authority, and on any property of an area actually served by an active volunteer fire department, as defined in R.S. 22:1580, shall be eligible to participate upon certification. Such returns must be made by the said companies within sixty days after December 31 of each year, provided that the mayor and council or regularly constituted authority of the incorporated municipality or the governing authority of the fire and waterworks district in any unincorporated municipality or the fire chief of the active volunteer fire department, as defined in R.S. 22:1580, shall file a verified statement as required by the governing authority of the parish on or before October 1 of each year. Provided that whenever any incorporated municipality or fire or waterworks district of any unincorporated municipality or active volunteer fire department is qualified as required by this Section for the first time, the treasurer of the governing authority of the parish shall have qualified or certified such body as being eligible to receive the tax. This statement must show that the incorporated municiaplity or the fire or waterworks district in any unincorporated municipality has a regularly paid fire department, as defined in R.S. 22:1580, and that it possesses fire duty apparatus and equipment in serviceable condition having a total value of five thousand dollars or more; and in the case of a volunteer fire department this statement must show that such volunteer fire department is an active volunteer fire department as defined in R.S. 22:1580, and that it possesses fire duty apparatus and equipment in serviceable condition having a total value of five thousand dollars or more. If any such incorporated municipality or any fire and waterworks district in any unincorporated municipality or active volunteer fire department fails to file a certified statement by the time herein prescribed, the verified statement may be filed at any time subsequent within one year from the time established herein, provided a like statement is filed with the Property Insurance Association of Louisiana. Provided, the statement to be furnished by an active volunteer fire department to the treasurer of the governing authority of the parish on or before October 1 of each year or the verified statement filed within one year subsequent thereto shall contain a map or survey of the area actually served by the active volunteer fire department prepared by a reg *950 istered surveyor or licensed civil engineer. If an active volunteer fire department is located within an incorporated municipality or fire and waterworks district only the incorporated municipality or the fire and waterworks district shall file a verified statement as provided for herein.
Amended by Acts 1958, No. 125; Acts 1958, No. 417, § 1; Acts 1976, No. 218, § 2, eff. Jan. 1, 1977.